**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61939-DAMIAN/STRAUSS**

**GLAXO GROUP LIMITED and**
**GLAXOSMITHKLINE INTELLECTUAL**
**PROPERTY DEVELOPMENT LIMITED,**

Plaintiffs,
v.

**TRANSPIRE BIO INC.,**

Defendant.
_______________________________________/

# ORDER ON MOTION FOR ISSUANCE OF A LETTER OF REQUEST

THIS MATTER came before the Court upon Plaintiffs' Motion for Issuance of a Letter of Request Pursuant to the Hague Convention on the Taking of Evidence in Civil Matters [DE 132] (the "Motion"). District Judge Melissa Damian has referred the motion to me for appropriate disposition. *See* [DE 95] at 3; [DE 103] at 2. I have reviewed the Motion, Defendant's Response [DE 138], Plaintiffs' Reply [DE 149], and the pertinent portions of the record. For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

This action arises out of alleged patent and trademark infringement by Defendant Transpire Bio Inc. ("Transpire"). *See generally* [DE 1]. Plaintiffs Glaxo Group Limited and GlaxoSmithKline Intellectual Property Development Limited (collectively, "GSK") challenge, among other things, Transpire's attempt to produce a generic version of GSK's Breo Ellipta inhaler via the statutory and regulatory framework for an Abbreviated New Drug Application ("ANDA"). *See id.* ¶¶ 1-6. The complaint includes counts for infringement of several of GSK's patents. *See, e.g.*, [DE 1] at 26, 39, 56, 74. It also includes counts for trademark infringement and unfair

competition under the Lanham Act, along with state-law claims for the same. *See id.* at 92, 93-94. Transpire later filed an answer with affirmative defenses and a separate counterclaim. *See generally* [DE 34]. Transpire's counterclaim seeks a declaratory judgment of noninfringement and invalidity of one or more of GSK's patents. *Id.* ¶ 1, at 51. It further seeks a declaratory judgment of noninfringement, and cancellation, of certain trademarks and trade dress owned by GSK. *Id.*

The current discovery dispute arises from GSK's attempt to seek documentary evidence from a third-party consultant, DCA Design International Limited ("DCA"), which Transpire previously retained to help it design and develop its generic version of the Breo Ellipta inhaler, the subject of this litigation. *See* [DE 132] at 1. GSK also seeks testimonial evidence from two of DCA's employees, Zoe Armstrong and Tom Earwaker. *See id.* Though, DCA is an entity formed in the United Kingdom, and Armstrong and Earwaker are likewise domiciled in the United Kingdom. *See id.* As a result, GSK asks the Court to issue a letter of request (under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters) to the appropriate judicial authority in the United Kingdom so that GSK may obtain the evidence it seeks. *See id.* at 1-2, 14. Transpire does not seek to preclude the issuance of a letter of request entirely. *See* [DE 134] ¶ 1. Instead, Transpire seeks to limit the scope of evidence sought so that the letter of request is, in Transpire's view, "appropriately narrowed and tailored." [DE 138] at 2.

## LEGAL STANDARD

The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Convention"), 23 U.S.T. 2555, "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). Specifically, the Convention provides that "a judicial authority of a Contracting State may, in

accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." 23 U.S.T. 2555, Art. 1. "A letter of request, also known as a letter rogatory, is a document issued by one court to a foreign court, requesting that the foreign court (1) take evidence from a specific person within the foreign jurisdiction and (2) return the testimony for use in a pending case." *Med. Props. Tr., Inc. v. Viceroy Rsch.*, No. 23-CV-00408, 2024 WL 150502, at *2 (N.D. Ala. Jan. 12, 2024) (citation modified); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) ("Letters rogatory are the means by which a court in one country requests a court of another country to assist in the production of evidence located in the foreign country."); *see also* 28 U.S.C. § 1782(b)(2) (authorizing issuance of letter of request); Fed. R. Civ. P. 28(b)(2) (authorizing issuance of letter of request for depositions). As relevant here, the United States and United Kingdom are included among the signatories to the Convention. *See Status Table: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, Hague Conf. on Priv. Int'l L., https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last visited Oct. 15, 2026).

The purpose of the Convention is "to establish a system for obtaining evidence located abroad that would be 'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state." *Aerospatiale*, 482 U.S. at 530 (citation omitted). "[I]t was intended to establish optional procedures that would facilitate the taking of evidence abroad." *Id.* at 538; *see also id.* at 536 ("[T]he Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."). The procedures under the Convention are thus "optional" and "available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Id.* at 541.

Still, considerations of international comity[1] require an analysis of the respective interests of the foreign nation and the requesting nation. *Id.* at 543-44; *see also id.* at 544 n.28 (providing factors relevant to comity analysis). When considering whether to issue letters of request under the Convention, "a court should determine both whether the discovery sought falls within the scope of discovery authorized by the Federal Rules of Civil Procedure, as well as whether considerations of comity warrant the requested discovery." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *18 (S.D. Fla. Nov. 16, 2009); *see also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 19-MD-2885, 2020 WL 5578428, at *4 (N.D. Fla. Feb. 18, 2020) ("[I]n determining whether to employ Hague Convention means or allow other procedures, a court must look to such factors as considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficacy of alternative formats for discovery." (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001))). A district court ultimately has discretion when deciding whether to issue a letter of request, particularly where a movant's request is overbroad or appears to be a fishing expedition. *See Yellow Pages*, 795 F.3d at 1273-74. "When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Aerospatiale*, 482 U.S. at 546.

## ANALYSIS

### I. SCOPE OF DISCOVERY UNDER FEDERAL RULES

Insisting it has standing to challenge discovery directed to a non-party, Transpire argues that GSK's proposed deposition topics and document requests are overly broad and not tailored to

[1] "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Aerospatiale*, 482 U.S. at 544 n.27.

the needs of the case. *See* [DE 138] at 2-6. Transpire further argues that the proposed deposition topics and document requests interfere with Transpire's attorney-client privilege and work-product protection. *See id.* at 10. GSK rejects Transpire's arguments. *See* [DE 149] at 2-10. I conclude that the discovery sought by GSK falls within the applicable scope of discovery and that Transpire has not sufficiently established the applicability of the attorney-client privilege or work-product doctrine to merit narrowing GSK's requests.

Rule 26(b) of the Federal Rules of Civil Procedure governs the general scope of discovery. *See* Fed. R. Civ. P. 26(b). It states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Id.* Factors relevant to the proportionality inquiry include (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Yet certain circumstances may require a court to limit the extent or frequency of discovery, such as when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

Assuming for sake of argument that Transpire has standing to oppose GSK's application for issuance of a letter of request (including on overbreadth grounds), the evidence sought by GSK falls within the scope of discovery. For starters, Transpire seemingly concedes that some of the evidence sought by GSK through the letter of request is at least relevant to GSK's claims. *See* [DE 138] at 2, 4-6 (arguing primarily that discovery sought by GSK is "overly broad" and "not

sufficiently tailored to the needs of the case" rather than that discovery sought is totally irrelevant); *see also id.* at 5 ("Because DCA supplied technical information relevant to infringement analyses, a categorical bar on all development testimony would be unnecessarily unduly broad."). The Court independently determines that both the information and testimony sought from DCA and the at-issue employees, Earwaker and Armstrong, are relevant to GSK's claims. As GSK points out, the discovery sought directly relates to Transpire's knowledge of GSK's trademark and patent rights and any allegedly willful infringement of those rights. *See* [DE 132] at 8-12. Furthermore, the importance that Transpire has placed on DCA in its separate motion for protective order underscores that the discovery sought is relevant, as Transpire retained DCA "to provide specialized technical, engineering, design, and development services relating to Transpire's inhaler device . . . ." [DE 124-2] ¶ 22, at 5. Transpire had retained DCA because it possessed expertise that Transpire lacked. *See id.* The information is therefore relevant for discovery purposes.

As for proportionality, Transpire objects to the scope of GSK's proposed deposition topics by arguing that the topics are overly broad. *See* [DE 138] at 4-6. But this objection is without merit. Contrary to what Transpire asserts, GSK's deposition topics do not "inherently encompass products and transactions entirely separate and unrelated from the Rollingstar Inhaler." *Id.* at 5. Rather, the topics that Transpire points to as examples of overbreadth—topics five and nine for Armstrong and topics five, eight, and nine for Earwaker—by their plain language are limited to (or at least tied to) the Rollingstar Inhaler. *See, e.g.*, [DE 132-1] ¶ 5, at 19-21 ("The design and development of the Rollingstar device's overall visual identity, appearance, and aesthetic . . . ."); *see also id.* ¶ 9, at 25-26 (focusing on "Rollingstar" inhaler); *id.* ¶ 5, at 31 (same); *id.* ¶ 8, at 33

(same); *id.* ¶ 9, at 34 (same).[2] Indeed, GSK's argument in reply is correct: the topics themselves are all about the Rollingstar Inhaler, and the lettered subtopics are merely illustrations of the types of information that GSK would ask about within the broader topic, which, again, is already limited to the Rollingstar Inhaler. *See* [DE 149] at 4-5. Therefore, the deposition topics are not overboard for Rule 26(b) purposes.

It is unclear whether Transpire is separately arguing that the information sought is not sufficiently relevant or proportional considering the expense of international discovery. To the extent that Transpire makes such an argument, the Court is unpersuaded because GSK has established the importance of these witnesses (and the corresponding document requests) in the case. Transpire's own interrogatory response acknowledges the central role for which DCA was hired and identifies the two witnesses that GSK seeks to depose as the employees that "principally participated" in the creation of the allegedly infringing device—with one acting as the "primary design contact" and the other acting as the "primary engineer contact." [DE 132-2] at 7. The declarations submitted by Transpire in connection with its motion for protective order further demonstrate DCA's central role in developing the inhaler at issue. Although Transpire elsewhere labels the discovery as "burdensome," *see* [DE 138] at 12, the Court is unconvinced. The Court recognizes that international discovery through a letter of request may at times be "unduly time consuming and expensive." *Aerospatiale*, 482 U.S. at 542. But the instant dispute concerns only two potential depositions and sixteen categories of documents, most of which appear to be asking for specific, identified documents. Any assertion that the information sought is alternatively available instead from Transpire's Rule 30(b)(6) witness is undercut by the central role that DCA

---

[2] The Court is cognizant of the fact that the deposition topics were submitted under seal and thus limits its quotation of them.

and these two witnesses played, giving them unique knowledge of the factual background. The discovery therefore appears to be proportional for Rule 26 purposes.

Transpire next argues that GSK's proposed deposition topics and document requests infringe on Transpire's claims of attorney-client privilege and work-product doctrine. *See* [DE 138] at 6-10. As reflected in the Court's prior order on Transpire's motion for protective order, it is at least *possible*[3] that Transpire could assert the attorney-client privilege or work-product doctrine over some of the materials requested in Appendix C to the draft letter of request or in response to deposition questions calling for such information. *See* [DE 153] at 8-12, 14-15 (analyzing whether attorney-client privilege or work-product doctrine could apply to Transpire's involvement of DCA and another consultant in development of allegedly infringing inhaler). However, Transpire's Response does not identify any particular document (or category of documents) in Appendix C that is privileged, *see* [DE 138] at 6-10, even though some of the items listed are specific, discrete documents, *see* [DE 132-1] at 36-37. Nor does Transpire's Response identify particular items from its privilege log (submitted with its motion for protective order) that correspond to the documents or category of documents requested here.

It is unlikely that *every* document sought by GSK and listed in Appendix C is privileged, even if some documents were made in anticipation of litigation (based on Transpire's decision to pursue an ANDA with a Paragraph IV certification). Similarly, it is unlikely that *all* the proposed topics to be discussed at any deposition of Armstrong or Earwaker could be barred due to objections of attorney-client privilege or work-product doctrine. Indeed, the fact that Transpire has

[3] In the order on Transpire's motion for protective order, I determined that the attorney-client privilege or work-product doctrine could apply, but Transpire's privilege log and declarations did not provide sufficient information for the Court to conclude that each at-issue communication or document was protected. [DE 153] at 15-19. The Court therefore required Transpire to provide GSK with an amended privilege log. *Id.* ¶ 2, at 18.

already produced extensive materials relating to DCA's work for Transpire itself suggests that these protections would not apply to everything DCA did. *See* [DE 138] at 10 (representing that Transpire has produced to GSK thousands of email communications and documents previously exchanged between Transpire and DCA). Regardless, Transpire certainly has not carried its burden to identify what specific documents are (or even what category of documents may) be subject to the attorney-client privilege or work-product protection. *See Judith Redden Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 13-CV-81017, 2014 WL 12461357, at *2 (S.D. Fla. Aug. 26, 2014) ("Generally, the burden of proof is on the party claiming attorney-client privilege or protection under the work product doctrine."). In short, Transpire's privileged-based objections are conclusory and do not indicate that the information sought falls outside of Rule 26(b)'s scope.

Still, given the close relationship between Transpire and DCA, Transpire should have some opportunity to consider whether specific documents to be produced by DCA are privileged. Transpire even asks for the ability to conduct a privilege review in its Response. *See* [DE 138] at 7. Given Transpire's advance notice of the specific things being sought by GSK, along with its existing contractual relationship with DCA, Transpire should be able to discuss with DCA what documents will be produced before any deadline set for DCA's production. In other words, Transpire should be ready to make any objection based on attorney-client privilege or the work-product doctrine (and provide a detailed privilege log) by any deadline set for DCA to produce the requested documents.

Because the evidence sought by GSK appears to be highly relevant, at least partly non-privileged, and proportional to the needs of the case, the Court will consider the international comity factors.

## II. INTERNATIONAL COMITY FACTORS

Transpire asserts that the international comity factors do not weigh in favor of issuing the proposed letter of request. *See* [DE 138] at 12. According to Transpire, GSK seeks documents, communications, information, and testimony that is available through alternative means that are less burdensome, especially where some information may only be useful for impeachment. *See id.* GSK asserts that the international comity factors weigh in its favor, retorting that it seeks highly relevant information from the witnesses with unique knowledge and that its interest is not merely one of impeachment. *See* [DE 132] at 8-14; [DE 149] at 9-10. I conclude that the international comity factors weigh in favor of issuing the letter of request without Transpire's desired narrowing.

Courts evaluating international comity consider the following factors: (1) "the importance to the litigation of the documents or other information requested"; (2) "the degree of specificity of the request"; (3) "whether the information originated in the United States"; (4) "the availability of alternative means of securing the information"; and (5) "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Aerospatiale*, 482 U.S. at 544 n.28 (citation modified).

These factors collectively favor issuing a letter of request. *First*, the documents and testimony sought by GSK are important to the litigation because, as Transpire itself admits via its motion for protective order, DCA played a pivotal role in helping Transpire develop a generic version of GSK's inhaler device. The two DCA employees at issue "principally participated" in the creation of the generic version of GSK's inhaler. [DE 132-2] at 7. And again, one of the would-be deponents acted as the "primary design contact," while the other acted as the "primary engineer contact." *Id.* Moreover, Transpire itself stressed in this litigation that it retained DCA to perform

design work that Transpire could not do internally because it lacked the necessary expertise. *See* [DE 124-2] ¶ 22, at 5. These DCA witnesses would thus have individualized knowledge of Transpire's and DCA's awareness of GSK's inhaler device, efforts to differentiate designs for Transpire, potential confusion, and other relevant considerations for the patent and trademark claims in this case.

*Second*, the requests are reasonably specific. As discussed above, the instant dispute only concerns two potential depositions and sixteen categories of documents. The deposition topics all relate to the development of the inhaler device that is the subject of the litigation. Meanwhile, the document requests are limited—with most plainly requesting specific, identified documents.

*Third*, it is unclear whether the information sought by GSK originated in the United States. However, the parties do not dispute that DCA and the two would-be deponents are from or found in the United Kingdom, and the requested discovery relates to Transpire's development of its generic version of the Breo Ellipta in the United States.

*Fourth*, while alternative means may exist for some of the information sought, the central role played by DCA and the two would-be deponents ultimately turns this factor in GSK's favor. The parties do not dispute that DCA, Armstrong, and Earwaker are all located in the United Kingdom and thus cannot be subpoenaed. *See* [DE 132] at 12; [DE 138] at 13. Transpire insists, however, that GSK should first have to explore these issues through domestic discovery, particularly by deposing Transpire's Rule 30(b)(6) witness. *See* [DE 138] at 12-15. While Transpire's Rule 30(b)(6) witness could potentially address some of the proposed deposition topics, such as the proposed third topic for Armstrong that relates to "DCA's contacts at Transpire in relation to the design and/or development of the Rollingstar inhaler[,]" [DE 132-1] at 18, the vast majority of the topics about the development of the at-issue device cover factual matters that

Armstrong and Earwaker possess unique knowledge of beyond a Rule 30(b)(6) witness. Indeed, Transpire retained DCA for its expertise, and the would-be deponents were the "primary design contact" and the "primary engineer contact." [DE 132-2] at 7. So, topics like proposed topic number six for Armstrong, which focuses on DCA's own analysis of inhaler products on the market during the design of the Rollingstar device, *see* [DE 132-1] at 21, get at DCA's (and even Transpire's) knowledge in a way that a Rule 30(b)(6) designee for Transpire could not. The possibility of some overlap does warrant narrowing the letter of request on its own.

The Court further disagrees with Transpire's apparent suggestion that GSK must show that "DCA and the Witnesses are the *only* sources of the information sought." [DE 138] at 13 (emphasis added). Although an evaluation of alternative means involves considering whether information can be sought without resorting to the Convention, the Court does not read the Convention's framework as requiring *absolute* exhaustion. This reading conflicts with the discretionary case-by-case focus that the Supreme Court laid out in *Aerospatiale*. *See* 482 U.S. at 536-38 (describing Convention as creating "optional procedures that would facilitate the taking of evidence abroad" and as acting as "a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad"); *see also* Fed. R. Civ. P. 28(b)(2)(b) ("A letter of request . . . may be issued . . . without a showing that taking the deposition in another manner is impracticable or inconvenient.").

*Fifth*, no evidence in the record clearly establishes that the national interests of the United Kingdom outweigh those of the United States to such a degree that the letters of request should not be issued or should not be issued without the narrowed scope that Transpire desires. *Cf. Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 18-cv-01479, 2019 WL 4687016, at *7 (N.D. Ala. June 6, 2019) ("The court finds no evidence that the interests of the Canadian government

would so outweigh those of the United States government as to bar the issuance of the letters rogatory in this action."). Furthermore, the United States obviously has a strong interest in enforcing its patent and trademark laws and ensuring a fair adjudication of matters before its courts, which requires open discovery. *See In re Photochromic Lens Antitrust Litig.*, No. 10-MD-2173-T-27, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012) ("As to the fifth comity factor, the balancing of national interests, the U.S. has strong interests in enforcing its antitrust laws and fairly adjudicating matters before its courts.").

To the extent that the proposed discovery conflicts with the laws of the United Kingdom, the Court leaves it to the judicial authority of the United Kingdom to narrow appropriately the scope of the evidence sought. *Cf. Med. Props. Tr.*, 2024 WL 150502, at *6 ("[J]ust as an American court enforcing letters of request issued in a foreign court may limit enforcement of the requested discovery where appropriate, the United Kingdom is free to do so here as well."); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, No. 10-CV-1376, 2013 WL 12291616, at *5 (S.D. Ind. Apr. 26, 2013) ("[I]f the deposition topics offend U.K. law, then the appropriate judicial authority will narrow the scope of such topics."); *Wight v. Bluman*, No. 20-81688-CIV, 2021 WL 8999538, at *3 (S.D. Fla. May 6, 2021) ("[T]he French Ministry of Justice, charged with enforcing Plaintiffs' letters rogatory, may limit enforcement of the discovery device where appropriate."); *Roche Diagnostics Corp.*, 2019 WL 4687016, at *7 ("[T]he Superior Court of Justice of the Province of Ontario, Canada, charged with enforcing Plaintiffs' letters rogatory, may limit enforcement of the discovery device where appropriate.").

Because the Federal Rules of Civil Procedure and international comity factors favor the issuance of the letter of request without the narrowing suggested by Transpire, the Court will grant the Motion.[4]

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. The Motion [DE 132] is **GRANTED**.

2. The redacted version of the Motion [DE 129] is **DENIED AS MOOT**.

3. On or before **October 23, 2026**, GSK shall refile the proposed letter of request with updated sender information, reflecting the sender as the undersigned Magistrate Judge.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of October 2026.

Jared Strauss

**Jared M. Strauss**
**United States Magistrate Judge**

[4] Although Transpire requested a hearing, [DE 138] at 16, the Court declines to set one. Transpire asserts that "[a] hearing is warranted because each deposition topic and document request requires a fact-specific, nuanced analysis . . . ." *Id.* Yet the deposition topics it cites as examples, as discussed above when considering whether the requested discovery is overly broad, are plainly relevant and tailored to this case. As for the document requests, Transpire does not provide analysis of any of the requests in its Response. Given these deficiencies, the Court does not find that a hearing is warranted.